UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERT WOODFOX
(DOC #72148)

VERSUS

BURL CAIN, ET AL.

CIVIL ACTION

NO. 06-789-JJB

## RULING ON MOTIONS FOR STAY OF JUDGMENT AND RELEASE PENDING APPEAL

In 1972, Mr. Woodfox, now a 61-year-old man, began serving a 50 year sentence in the Louisiana State Penitentiary for armed robbery. One year into his sentence, he was charged by grand jury indictment of second degree murder of prison guard, Brent Miller. He was found guilty of Miller's murder in 1973. He appealed his sentence, and the Louisiana Supreme Court eventually affirmed his conviction.[1] In 1992, Mr. Woodfox's conviction was overturned on the grounds of ineffective assistance of counsel by a federal court and in March 1993, the State reindicted him for first degree murder. That charge was subsequently amended by the State to second degree murder. He was retried for second degree murder in 1998 and again found guilty. The First Circuit Court of Appeals affirmed this conviction. On June 15, 2001, the Louisiana Supreme Court denied Mr. Woodfox's writ application.[2] On November 13, 2001, the United States Supreme Court denied Mr. Woodfox's petition for certiorari.[3]

Mr. Woodfox filed an application for post conviction relief with the 21st Judicial District Court on October 30, 2002. That court denied relief and Mr. Woodfox applied for

---

[1] 291 So.2d 388 (La. 1974).
[2] State v. Woodfox, 793 So.2d 1235 (La. 2001).
[3] Woodfox v. Louisiana, 534 U.S. 1027 (2001).

1

a writ to the First Circuit Court of Appeals, which was granted on May 16, 2003.[4] The appellate court remanded the matter to the trial court and on October 24, 2004, the trial court again denied Mr. Woodfox's post conviction relief application. Mr. Woodfox again applied for a writ. The First Circuit denied the writ on August 8, 2005 and the Louisiana Supreme Court denied review on September 29, 2006.[5]

Mr. Woodfox filed his habeas corpus petition in 2006, challenging his 1998 conviction on the grounds of ineffective assistance of counsel, state suppression of exculpatory evidence, and racial discrimination in the selection of the grand jury foreman.[6] This Court approved the Report and Recommendations of United States Magistrate Judge Christine Noland[7] and on September 25, 2008 granted Woodfox's writ

---

[4] State v. Woodfox, 2003-KW-0245 (La. App. 1 Cir. 5/16/03).
[5] State v. Woodfox, 2005-0551 (La. App. 1 Cir. 8/8/05), *writ denied*, 2005-2476 (La. 9/26/06), 937 So.2d 850.
[6] The State concedes that Mr. Woodfox's claims are timely and have been fully exhausted through the state court system. Doc. 33, page 4.
[7] The Magistrate Judge's recommendation to grant Mr. Woodfox's writ was based on her finding that his defense counsel in 1998 was ineffective under the two-part *Strickland v. Washington* test, 466 U.S. 668, 687, which sets out:

> First, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Specifically, the magistrate found that counsel's performance had been deficient in (1) failing to file a motion to quash the 1998 indictment when the State's key witness, Hezekiah Brown, was dead and physical evidence, a piece of clothing, was lost; (2) allowing the 1973 prosecutor, John Sinquefield, to testify as to Brown's credibility and demeanor; (3) failing to investigate and consult expert witnesses regarding bloodstain evidence, evidence of a bloody print, and Paul Joseph Fobb's eyewitness testimony; (4) failing to object to the indirect admission of inadmissible hearsay evidence in the form of Chester Jackson's prior statements.

Woodfox argues with regard to the 1998 indictment that it should have been quashed because the State's key witness, Hezekiah Brown, was deceased and because after his indictment the other indictments returned by the grand jury were quashed because the grand jury itself was defective. Doc 1, page 93. Woodfox asserts that introduction of Brown's prior testimony ran afoul of the Confrontation Clause and that his counsel could not impeach or cross-examine Brown concerning the promise of a pardon made to him in exchange for his 1973 testimony. Doc. 33, page 19. The fact that the other indictments returned by the grand jury were quashed lends credence to Woodfox's argument that his indictment as well should have been quashed. However, this is not determinative of the matter and "there are few viable challenges that a defendant may bring to an indictment based on the evidence presented." 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 112 (4th ed. 2008). As the United State Supreme Court has explained:

2

of habeas corpus.[8] This Court ordered the State to either retry Mr. Woodfox in 120 days or dismiss the charges.[9]

The State has moved to stay the execution of the September 2008 judgment so that Respondent, Warden Burl Cain, may perfect his appeal to the United States Fifth Circuit Court of Appeal.[10] Defendant Woodfox has filed a motion for release[11] pending

---

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment, An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

Costello v. U.S., 350 U.S. 359, 363 (1956). *See also* U.S. v. Calandra, 414 U.S. 338, 345 (1974) ("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."); 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 112 (4th ed. 2008) ("Motions to dismiss indictments have been repeatedly denied though it was claimed that the evidence before the grand jury was insufficient for an indictment, or that it was hearsay, or that it was illegally obtained…or that it was otherwise incompetent.").

This Court does not make a determination as to whether the indictment would have been quashed had Woodfox's counsel brought such a motion; however, failure to bring the motion is in itself sufficient to support a claim of ineffective assistance of counsel. Thus, on the claim of ineffective assistance of counsel, the State has not demonstrated a likelihood of success on the merits.

Magistrate Judge Noland also found that there was a reasonable probability that the outcome of Mr. Woodfox's trial would have been different had counsel's performance not been deficient. In particular, she found that Brown was critical to the State's case and the piece of clothing was the only physical evidence linking Woodfox to the crime. Because she found that there was a relatively weak case against Woodfox to begin with, she reasoned that it took less to find the cumulative effect of counsel's deficient performance was material.

In the event that her recommendations were not adopted, Magistrate Noland found that Woodfox had also made out a prima facie case of discrimination in regard to the selection of a grand jury foreman and recommended an evidentiary hearing in which the State could rebut the presumption of discrimination created by Woodfox. In a footnote, Magistrate Noland additionally found that Woodfox's habeas petition contained two cognizable *Brady* violation claims

[8] Doc. 50.

[9] Doc. 50.

[10] Doc. 54. The State asserts that a retrial in such a short amount of time will be extremely difficult and that Mr. Woodfox is dangerous and poses a flight risk. The State argues it must be given the opportunity to correct alleged constitutional errors and that Woodfox can only be released if the State fails to timely obtain a stay or cure the error within the deadline set by this Court. Because Mr. Woodfox's indictment was never quashed, the State also argues that charges for second degree murder are still pending and Woodfox is still subject to state custody. Doc. 57 (citing Capps v. Sullivan, 13 F.3d 350, 353 (10th Cir. 1993) ("The effect of the writ is to vacate the conviction and release the petitioner from custody. In fact, rather than barring a new trial, the district court normally should facilitate it by suspending the writ for a time reasonably calculated to provide the state an adequate opportunity to conduct the new trial.").

3

the State's appeal of this Court's judgment granting the writ of habeas corpus and the State has filed an opposition.[12] A hearing was held on October 14, 2008 and the Court left the matter open to allow the parties to take the depositions of Warden Burl Cain and Dr. Brie Williams.[13] Both the State and Mr. Woodfox have submitted supplemental memoranda regarding these recent depositions.[14]

## Analysis

Under 28 U.S.C. §2243, federal courts are authorized to dispose of habeas corpus matters "as law and justice require." As stated by the United States Supreme Court in *Hilton v. Braunskill*,[15] federal courts are granted broad authority in conditioning habeas relief, including granting a stay of release pending appeal. Despite this broad authority, there is "a presumption of release from custody…but that presumption may be overcome if the judge rendering the decision, or an appellate court or judge, 'otherwise orders.'"[16] The Supreme Court has instructed federal courts to apply the general standard governing stays of civil judgments[17] and to consider the following four

---

[11] Mr. Woodfox has moved for his release from custody under such conditions as deemed appropriate by this Court. Doc. 53. Mr. Woodfox asserts that his conduct record has been excellent for over three decades, and that he has significant health problems that likely would be mitigated if he were released pending appeal.

[12] Doc. 57.

[13] Doc. 61.

[14] Docs. 69 & 71. Mr. Woodfox has also filed a response (doc. 73) to the State's supplemental memorandum. Although Mr. Woodfox did not move this Court for leave to file this document, we grant such leave and will consider Mr. Woodfox's response as proper. The Court does not need further briefing from either party.

[15] Hilton v. Braunskill, 481 U.S. 770, 775 (1987).

[16] *Id*. at 774. This Court has ordered retrial within 120 days or dismissal of the charges against Woodfox. Federal Rule of Appellate Procedure 23(c) states:
> While a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise – be released on personal recognizance, with or without surety.

[17] Rule 62(c) of the Federal Rules of Civil Procedure sets forth in part:
> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights….

traditional factors when determining whether to issue a stay of judgment and deny a prisoner's release: (1) the State's likelihood of success on the merits on appeal; (2) whether the State would be irreparably injured absent a stay; (3) whether the issuance of a stay would substantially injure other parties; (4) whether the public interest supports a stay.[18] Additionally, the court may consider the possibility of the defendant's flight, the possible danger to the public if the defendant is released, and the State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal.[19] This Court will analyze the four traditional *Hilton* factors in turn.

<u>State's likelihood of success on the merits</u>[20]

First, the State argues that two unanimous state court decisions convicting Woodfox (the 1973 and 1998 convictions) indicate a likelihood that the State will be successful on appeal. Second, the State asserts that the record shows that 1998 defense counsel was not deficient.[21] In response, Mr. Woodfox argues that his ineffective assistance of counsel claim was based on multiple deficiencies by his 1998 defense counsel and that "it is not reasonable to presume that the State will convince

---

[18] *Hilton*, 481 U.S. 770, 776.

[19] *Id*. at 777.

[20] When reviewing a federal district court's grant of habeas relief, the Court of Appeals examines factual findings for clear error and reviews issues of law de novo; when examining mixed questions of law and fact, the appellate court uses a de novo standard by independently applying law to facts found by district court, as long as district court's factual findings are not clearly erroneous. Fratta v. Quarterman, 536 F.3d 485, 499 (5th Cir. 2008); Blanton v. Quarterman, --- F.3d ---, 2008 WL 4277387 (5th Cir. 2008).

[21] In its brief, the State does not address Magistrate Noland's findings of deficient performance as to Brown's testimony or the indirect admission of Mr. Jackson's testimony. However, the State does assert that 1998 counsel objected to the inability to access the physical evidence by way of a Motion to Compel and "made vigorous arguments on the motion at a hearing on November 4, 1998." Further, the State argues that 1998 counsel did object to Mr. Sinquefield's testimony on three separate occasions, that counsel made an independent but unsuccessful search for the physical evidence, that counsel already had a favorable result in place regarding the bloody fingerprint and it would have run counter to counsel's professional obligation to Woodfox to seek another expert opinion and risk that expert disagreeing, and that while counsel did not introduce Fobb's medical records, he did introduce other documents that established Fobb's vision problems.

5

the Court of Appeals to reject virtually all of this Court's reasoning."[22] Further, Woodfox asserts that while Magistrate Noland did not base her recommendation to grant his habeas petition on his two other claims, she did find both to be cognizable (the asserted *Brady* violations and discrimination in choosing the 1998 grand jury foreman). Given the number of deficiencies by 1998 counsel found by the magistrate judge, as well as her findings that Woodfox has stated cognizable claims of *Brady* violations and discrimination, this Court finds that the State has not showed a likelihood of success on the merits. Therefore, this factor weighs in favor of Woodfox's release pending the State's appeal.

Irreparable injury to the State absent a stay

The State argues that it is unlikely that a new trial could be had within the 120 day timeframe set out by this Court and that even if a timely trial could be had, a verdict other than guilty as charged would irreparably impact respondent's appellate rights and the expense of a murder trial would be irretrievably lost. Woodfox responds by arguing that his release on bond would not affect the State's appellate rights and further suggests that he could be released and this Court stay its judgment requiring retrial so that the 120 day period does not run while the State appeals. This option would avoid any waste of resources that would occur if the State had to appeal and prepare for trial at the same time, and has been used by a number of courts.[23] This Court finds that the

---

[22] Doc. 53-2, page 4.
[23] *See* Smith v. Jones, 2007 WL 3408552, *2 (E.D. Mich., Nov. 15, 2007) ("The Court also finds that it would be a waste of judicial resources for the appeal to proceed in the Sixth Circuit Court of Appeals, while simultaneously requiring the State to retry Petitioner."); Poindexter v. Booker, 2007 WL 2780556, *4 (E.D. Mich., Sept. 20, 2007) ("Respondent has an interest in not wasting State and judicial resources by simultaneously pursuing an appeal in the Court of Appeals and re-prosecuting Petitioner in state court. The Court finds that these competing interests

only injury presented by the State is the possible waste of resources if the State is required to prepare for a new trial while at the same time appealing our ruling. Therefore, we find that if the remaining factors weigh in favor of Mr. Woodfox's release pending appeal, our previous judgment requiring retrial within 120 days should be stayed.

Substantial injury to other parties

The State argues that no one other than Woodfox would be substantially injured if this Court declined to release Woodfox pending appeal. In response, Mr. Woodfox argues that under Supreme Court precedent, "the interest of the habeas petitioner in release pending appeal, [is] always substantial."[24] Mr. Woodfox points out that he has been imprisoned for 40 years, 33 of which were in solitary confinement.[25] He states that he suffers from serious medical conditions that will likely improve if released[26] and because of these medical conditions has an interest in release even greater than that the Supreme Court recognizes as "always substantial."

---

are best reconciled by granting Respondent's Motion for Stay Pending Appeal and granting Petitioner's request for release on bond….").

[24] Hilton v. Braunskill, 481 U.S. 770, 777 (1987). The Court went on to explain:
> The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success in its appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second [irreparable injury to the state] and fourth [the public interest] factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control.

*Id*. at 778 (internal citations omitted).

[25] Doc. 53-2, page 7.

[26] Mr. Woodfox's memorandum in support of his motion for release states that he suffers from stage 2 hypertension, diabetes, cardiovascular disease, and chronic renal insufficiency. Doc. 53-2, page 7. While Mr. Woodfox is no longer kept in closed cell restriction, he asserts that the maximum security dormitory is still extremely stressful and restrictive, even when compared to the generally restrictive environment of the penitentiary.

7

The State asserts that Mr. Woodfox is receiving adequate medical treatment for conditions likely attributable to his family history rather than his incarceration.[27] Further, the State points out that the medical report submitted by Mr. Woodfox was written over two years ago prior to his transfer out of extended lockdown.[28] Because Mr. Woodfox's medical condition was based on this two-year-old report by Dr. Brie Williams, this Court requested that Dr. Williams be deposed again. Dr. Williams reviewed Mr. Woodfox's more recent medical records from the penitentiary and was deposed by telephone conference. She also submitted a declaration in which she asserted that Mr. Woodfox "continues to suffer serious medical conditions, including hypertension, Type 2 Diabetes Mellitus, cardiovascular disease, irreversible ischemia, and chronic renal insufficiency."[29] Dr. Williams further avers that "the medical treatment that Mr. Woodfox is currently receiving at LSP is inadequate to treat his serious medical conditions" and that his "immediate release from the stressful prison environment at LSP would mitigate some of the serious health risks he is facing."[30] In response, the State argues that Dr. Williams' deposition and declaration are "irrelevant" and that her "present declaration simply reemphasizes the findings of the 2006 declaration without any further

---

[27] The State notes that Mr. Woodfox's diabetes is of the same type his mother had and that his mother also suffered from coronary difficulties and renal failure. *See* Expert Witness Report, Doc. 53-3, pages 37 & 48.

[28] Dr. Brie Williams examined Mr. Woodfox during a visit to Angola State Penitentiary on August 16 through August 18, 2006. Doc. 53-3, page 31. At that time, Mr. Woodfox was kept in closed cell restriction and the medical expert noted that "continuation of 23-hour confinement in CCR poses medical risks to Albert Woodfox including worsening hypertension, progression to renal failure, and mortality." Doc. 53-3, page 43. According to the affidavit of Joseph Lamartinere, the Warden of Camp D at the penitentiary, Mr. Woodfox was transferred from closed cell restriction to Camp D on March 20, 2008. Doc. 53-3, page 22. The warden goes on to state that inmates housed in Camp D are permitted access to the outside exercise yard for approximately four hours every day. Doc. 53-3, page 23.

[29] Doc. 69.

[30] Doc. 69.

examination or treatment."[31] The State asserts that Dr. Williams' opinion is entitled to no weight because she is an examining rather than treating physician[32] and that Mr. Woodfox is receiving adequate medical care through the penitentiary.[33]

Although Dr. Williams did not have the opportunity to examine Mr. Woodfox again, this Court finds that her declaration regarding Mr. Woodfox's current medical conditions is entitled to some weight. Mr. Woodfox is a 61-year-old man who suffers from numerous medical complications. Although it is possible that the stress of release from prison after all these years will hinder rather than help these conditions, as Mr. Woodfox points out, a habeas petitioner's interest in release is "always substantial." Here, given Mr. Woodfox's age and medical situation, that substantial interest is even greater. Accordingly, this Court finds that this factor weighs in favor of Mr. Woodfox's release pending appeal.

<u>The public interest</u>

The State asserts that Woodfox is dangerous,[34] especially to witnesses if re-trial is anticipated, and is a flight risk, especially since he has attempted flight before (an escape from Orleans Parish Prison in 1969). Further, the State points out that in his memorandum in support of release, Mr. Woodfox admits his participation in an inmate

---

[31] Doc. 71, page 23.
[32] Doc. 71, page 27
[33] Doc. 71, pages 25-26. The State also raises the issue of Mr. Woodfox's ability to pursue and afford adequate medical care on his own if released.
[34] As the Supreme Court explained in *Hilton*:
> Although the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the case. This being the case, we do not agree that the Due Process Clause prohibits a court from considering, along with the other factors that we previously described, the dangerousness of a habeas petitioner as part of its decision whether to release the petitioner pending appeal.

9

fight.[35] The State cites Mr. Woodfox's conduct record while in the penitentiary as well as his previous arrests in support of its argument that Mr. Woodfox is a career criminal and would be a danger to the public if released. The State cites numerous arrests occurring more than thirty years ago.[36] Given how long ago these arrests occurred as well as the fact that Mr. Woodfox was never convicted of these crimes, the Court does not consider such alleged behavior occurring so far in the past to be relevant to Mr. Woodfox's current petition for release. As for Mr. Woodfox's conduct while incarcerated, the Court notes that the last incident of violence occurred over two decades ago. In regard to Mr. Woodfox's conduct record, as well as his potential for violence, Warden Burl Cain was deposed. Warden Cain believes that Mr. Woodfox continues to show a propensity for violence and that while his conduct recently has been "good," that conduct "does not reflect on the potential for violence."[37] Further, Warden Cain noted that he believes Mr. Woodfox is not rehabilitated.[38]

---

[35] This fight occurred in December of 1985. According to the State's supplemental opposition to Mr. Woodfox's motion for release, Mr. Woodfox "ran out of his cell to another inmate's cell and began to fight; ignores four orders to stop. 'he's absolutely obviously the aggressor.' Shows his propensity for violence." Doc. 71, page 7.

[36] Doc. 71, pages 16-17.

[37] Deposition of Burl Cain, doc. 71-2, page 41. Warden Cain went on to state: "I know in my heart he needs to be in that cell block. He does not need to be out of Angola. Pick me apart. That's the facts. I believe it. He is dangerous. He is dangerous if he is free of my prison, and he's dangerous on the streets." Doc. 71-2, page 41. Warden Cain also stated that his opinion of Mr. Woodfox is "what I believe as a professional in corrections" and that even assuming Woodfox did not commit the murder of Brent Miller:

> I would still keep him in CCR. I still know he has a propensity for violence. I still know that he is still trying to practice Black Pantherism, and I still would not want him walking around my prison because he would organize the young new inmates. I would have me all kinds of problems, more than I could stand, and I would have the blacks chasing after them. I would have chaos and conflict, and I believe that. He has to stay in a cell while he's at Angola.

Doc. 71-2, page 42.
Warden Cain also indicated in his most recent deposition that his previous agreement that Woodfox "could almost be described as a model prisoner" was taken out of context. (Doc. 71-2, page 39). In his 2006 deposition, Warden Cain was asked to assume the following facts as summarized by Mr. Woodfox's expert:

> The most recent disciplinary report of any kind for Mr. Woodfox was almost four years ago, 12-4-02, were aggravated disobedience that resulted in loss of a minor privilege, two

10

Mr. Woodfox argues that the public has a strong interest in the State discontinuing the incarceration of individuals not afforded a fair trial, and reiterates that he has had an excellent conduct record during his imprisonment.[39] Mr. Woodfox also asserts that Warden Cain's opinion regarding his potential release may have more to do with his association with the Black Panthers[40] than with his conduct while imprisoned and that Mr. Woodfox's continued imprisonment "on the basis of his perceived political beliefs would be flatly unconstitutional."[41] The Court makes no determination regarding whether Warden Cain's opinion is based upon Mr. Woodfox's perceived political associations; however, we do find that the Warden's years of experience do lend his opinion some weight. Despite this weight, Mr. Woodfox does seem to exhibit a good conduct record, especially in the most recent years of his incarceration. Warden Cain's

---

weeks canteen, which was suspended for ninety days. According to Mr. Woodfox, this charge arose when he requested that his cell light be turned on during a cloudy day. When he persisted in his request to see a supervisor, he was accused of, quote, 'hollering and shaking the bars on his cell,' at which time he was moved to isolation for two days. See LSP Disciplinary Report, Albert Woodfox, 12-4-02. Since 1992 Mr. Woodfox had one other disciplinary report of 5-5-99 for a threat to security. The disciplinary charge was based on his assertion that a hunger strike for contesting the conditions of extended lockdown would continue. He served nine months disciplinary detention Camp J for his part in the hunger strike. A review of his conduct report documents the chronicles. All disciplinary events indicate that from 1971 to present he was charged with a single act of violence in 1985, which was an inmate fight for which he received a suspended sentence based on his good conduct record. See Disciplinary Report, Albert Woodfox, 12-4-85.

Based on the facts as stated above, Warden Cain agreed that Woodfox could almost be described as a model prisoner. However, in that same deposition, Warden Cain also stated that Woodfox should not be allowed to leave CCR, "because I think threat, potential threat to the stability of the institution, the safety of the employees and the other inmates." Doc. 71-2, page 104.

[38] Warden Cain stated:
> I wouldn't release him to the general population to live among the rest of us at all, because he is not a rehabilitated prisoner. He will be a predator when the opportunity comes his way and when he feels the need to be that, to indulge himself in his own wishes and desires. That's what he does. He is not rehabilitated.

Doc. 71-2, page 18.

[39] Mr. Woodfox also states in his memorandum in support of release that he "maintained a clean conduct record while he was in the general population of the Amite city jail awaiting trial from 1996 to 1999." Doc. 53-2, page 15.

[40] Doc. 69, page 5.

[41] Doc. 69, page 7.

11

testimony goes more to problems Mr. Woodfox may cause within the prison system (i.e. his organizing young black prisoners). Warden Cain states that Mr. Woodfox needs to be in a cell while he is in Angola prison.[42] He does not offer any evidence that Mr. Woodfox would be violent outside a prison setting. Further, the Warden has testified earlier that Mr. Woodfox is an exemplary prisoner.

## Conclusion

We find that the factors set out above do not outweigh the presumption in favor of Mr. Woodfox's release pending the State's appeal. The Court specifically finds as facts that Mr. Woodfox today is not the Mr. Woodfox of 1973. Today he is a frail, sickly, middle aged man who has had an exemplary conduct record for over the last twenty years. At the hearing before this Court on October 14, 2008, testimony was adduced that if released Mr. Woodfox would live with his niece and her family in a gated subdivision in Slidell, Louisiana. Mr. Woodfox has withdrawn that request because of fear of harm to his niece and her family by members of her subdivision and that other ramifications could be suffered by his niece and her family. This change was brought about by counsel representing the State of Louisiana contacting the subdivision home owners association and providing them with information regarding Mr. Woodfox. The Court is not totally privy to what information was given to the association but from the documents filed it is apparent that the association was not told Mr. Woodfox is frail, sickly, and has had a clean conduct record for more than twenty years. Mr. Woodfox will have to find another place to live prior to his release. The Court will condition Mr.

---

[42] The Court notes that although Warden Cain asserts that Mr. Woodfox is a danger to both the prison community and the general public, even while in prison, Mr. Woodfox's participation in the 1985 inmate fight led to a suspended sentence based on his good conduct record. The Court notes that the penalties for other rule infractions were also insignificant.

Woodfox's release pending appeal and/or his retrial on his obtaining a residence and living conditions acceptable to this Court. Therefore, this Court **GRANTS** Mr. Woodfox's motion for release pending the State's appeal (doc. 53).

In his supplemental memorandum regarding the depositions of Warden Burl Cain and Dr. Brie Williams, Mr. Woodfox asserts that "he does not oppose a stay of judgment if, and only if, this Court grants the Petitioner's release motion."[43] Therefore, this Court **GRANTS** the State's motion to stay our judgment requiring a new trial within 120-days (doc. 54).

Signed in Baton Rouge, Louisiana, on November 25, 2008.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[43] Doc. 69, pages 14-15.