UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERT WOODFOX

VERSUS

BURL CAIN, *Warden of the Louisiana
State Penitentiary*, ET AL.

CIVIL ACTION

NO. 06-789-JJB

### RULING AND ORDER ON RESPONDENTS' MOTION IN LIMINE

Before the Court is a motion *in limine* (Doc. 214) filed by respondents to define the scope and sequence of evidence presented at the hearing on petitioner Albert Woodfox's *habeas corpus* petition scheduled for May 29, 2012. An opposition, reply, and sur-reply have been filed. (Docs. 219, 225 & 227). Oral argument is unnecessary, and any remaining issues may be resolved prior to the hearing.

I.

The May 29 hearing will proceed in this manner: 1) Woodfox will briefly present the same evidence he presented to the state courts in support of his *prima facie* case, simply for ease of reference in the record; 2) the State will then present its case-in-chief to show race neutrality in the selection process; and 3) Woodfox will then have an opportunity to rebut the State's showing. The Court will set no further formal parameters beyond that, other than to assure both sides that they will be fully heard and no substantive argument presented (*e.g.,* in Woodfox's rebuttal case) will go unanswered by the other side. This comports with general notions of burden-shifting motive analysis. *See, e.g., Miller-El v. Dretke*, 545 U.S. 231, 239-40 (describing evolution of inquiries into discriminatory use of peremptory challenges and finding *Batson v. Kentucky*, 476 U.S. 79 (1986), authorized three step analysis permitting challenging party to show a supposedly neutral explanation is "unworthy of credence") (citing *Reeves v. Sanderson*

1

*Plumbing Products, Inc.*, 530 U.S. 133 (2000)); *Batson*, 476 U.S. at 94, n. 18 (citing Title VII disparate treatment employment discrimination cases as properly explaining the operation of the burden-shifting framework for analyzing intentional race discrimination and subsequently relying on grand jury discrimination case law to flesh out requirements of a *prima facie* case) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *McDonnell Douglas*, 411 U.S. at 805 (holding that discrimination claimants must be allowed a chance to show pretext and thus "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for [the act in question] were in fact coverup for a racially discriminatory decision").

Thus, the State will have the burden of producing evidence of a race-neutral reason legally sufficient to justify a judgment in their favor. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *(Christopher) Guillory v. Cain*, 303 F.3d 647, 650 (5th Cir. 2002) (holding that "a simple denial … is inadequate" and the "prima facie case places the burden of offering [objective and nondiscriminatory] explanations upon the official"). Then, the presumption of illegality from the *prima facie* case disappears. *Burdine*, 450 U.S. at 255, n. 10. At that point, Woodfox retains the ultimate burden of persuasion, either directly by showing the discriminatory reason more likely motivated the actor than the neutral reason, or indirectly by showing the proffered reason is false or unworthy of credence. *Burdine*, 450 U.S. at 255-56. Because Woodfox has the ultimate burden in this case, the State does not have a right to "the last word" because their burden is one of production only, not of persuasion, making their request inappropriate. As mentioned above, they will not be forced to both present their case-in-chief while also attempting to anticipate and respond to Woodfox's rebuttal case.

II.

The State also challenges elements of the report submitted by Woodfox's statistical expert, Dr. Brian Marx, as containing facts "fundamentally altering the scope" of the case by "advancing brand-new theories" supporting the discrimination claim. (Memo. in Support, Doc. 214-1, at 5-6). The State specifically seeks a ruling on the inadmissibility of four discrete pieces of evidence. The Court treats each in turn.

A.

The first argument concerns an item of factual accuracy. The State contends Woodfox stipulated to the fact that, from 1980 through the time when Woodfox made his motion to quash the indictment at his re-trial in October 1994, eight of the 30 grand jury foremen were black. Woodfox did indeed stipulate to those facts. In support of his motion to quash before trial, Woodfox introduced Defense Exhibit 4 jointly as State Exhibit 1. (Doc. 214-3, at 29-34). This joint exhibit was the State's response to Woodfox's motion and purported to list the race and gender of every grand jury foreperson from March 1980 to September 1994. (*Id.*). Of those 30 grand jury panels, each of which sat for six months, the document identifies eight grand jurors as being black:

1) September 1980: Emmanuel Smith – black male
2) March 1982: T.J. Pate – black male
3) September 1983: Darline Pate – black female
4) March 1985: Ernest Edward Wilson – black male
5) September 1987: Charles L. King – black male
6) September 1990: Bernard Jackson – black male
7) March 1991: Raymond Minor – black male
8) September 1994: Mary Sharper – black female

The remaining foremen were all identified as white. (*Id.*). At oral argument on the motion to quash, defense counsel and the district attorney stipulated to those exhibits. (Transcript of Oral Arg. on Motion to Quash, Doc. 214-4).

3

But the characterizations in that document appear demonstrably untrue. Documents prepared by the West Feliciana Parish Registrar of Voters' office shows that two of the district attorney's supposedly black foremen were in fact white. (*See* Doc. 219-1 (affidavits attesting to official nature of the information provided to defense counsel)). Specifically, Ernest Edward Wilson from the March 1985 panel and Charles L. King from the September 1987 panel were both white, not black. (Grand Juror Identity Information, Doc. 214-5, at 57-58, 63).[1] Finally, the parties count Mary Sharper, a black female who served as forewoman of the September 1984 panel. However, because Woodfox was indicted by the March 1993 panel, information from the three grand juries that followed is irrelevant. As the State points out, "cases involving discrimination in the selection of grand jury forepersons establish that the relevant time period is that leading up to the indictment in question." *Crandell v. Cain*, 421 F.Supp.2d 928, 936 (W.D. La. 2004) (citing *Ray v. Cain*, No. 01-31406, 71 Fed.Appx. 442 (5th Cir. June 11, 2003) (table)[2]). Without considering the grand juries composed after Woodfox's indictment, this would reduce the number of black forepersons from 8 to 5, while also reducing the number of relevant panels from 30 to 27. Therefore, the percentage of minority forepersons during the relevant period—from March 1980 to March 1993—is 18.5%.

The state court's determination to accept the 8/30 figure was based on manifest error which constituted an unreasonable determination of the facts, and Woodfox has shown by clear and convincing evidence that that factual determination should not be followed. Moreover, it

---

[1] The foreman of the March 1988 panel, Earl Dean Jenkins, was not racially identified by the registrar. (Doc. 214-5, at 64). However, the district attorney asserted he was a white male. (Doc. 214-3, at 32). Another discrepancy concerns the March 1987 panel because the registrar did not identify a foreperson. (Doc. 214-5, at 62). However, the registrar in all other entries listed the foreperson first, and that person, Herbert Stutzman, Jr., was identified by the district attorney as a white male. (Doc. 214-3, at 32).

[2] This unpublished opinion is available at http://www.ca5.uscourts.gov/Opinions.aspx by search using the docket number.

4

appears Woodfox's counsel detrimentally relied on the district attorney's misrepresentation of fact—whether intentional or not—which should not, as a matter of fundamental fairness, preclude him or this Court from utilizing the correct facts at this stage. The Court must therefore deny the motion *in limine* on this ground.

B.

Regarding usage of the grand jury data, the Court finds the compositions of grand juries subsequent to the one indicting Woodfox in March 1993 are simply not relevant.[3] *See Crandell*, 421 F.Supp.2d at 936. As for the compositions of grand juries prior to 1980, the Supreme Court has indicated that the degree of underrepresentation of the group allegedly being excluded must be proven "over a significant period of time." *Rose v. Mitchell*, 443 U.S. 545, 565 (1979) (quoting *Castaneda v. Partida*, 430 U.S. 482, 494 (1977)). The State argues evidence going back to 1964 is not probative of discrimination in 1993 because of the systemic transformation in the civil rights of minorities that occurred between 1964 and 1980. The Court finds this persuasive. *Cf. Castaneda*, 430 U.S. at 495-96 (eleven year period sufficient to show statistical disparities). The Court finds the grand jury panels from March 1980 to March 1993 to be the relevant period for analysis. The Court therefore grants the motion to exclude evidence relating to grand jury panels prior to 1980 or subsequent to Woodfox's indictment by the March 1993 panel.

---

[3] To the extent a larger sample size in a given measurement would be needed for statistical completeness, the Court will consider revisiting this issue if properly presented with such a scenario. However, no such instance is readily apparent in this case. The situation Woodfox cites from *(Christopher) Guillory v. Cain*, 303 F.3d 647 (5th Cir. 2002), is inapposite. There, the habeas petitioner was challenging the judge's very first foreperson selection, and thus discriminatory intent was nearly impossible to discern from a single selection. The federal habeas court considered two subsequent selections of minority grand jury forepersons which it permissibly determined provided evidence that discriminatory intent could not be inferred based on his first choice. The judge in this case, on the other hand, made numerous selections prior to the March 1993 grand jury foreman selection at issue. Absent convincing expert testimony that a larger sample size would be needed, the Court feels the twelve appointments conducted by Judge Wilson Ramshur between 1983 and 1994 provide an adequate snapshot. (*See* Marx Report, Doc. 214-6, at 8).

C.

Regarding the individual selections of Judge Wilson Ramshur, the district judge who picked the grand jury foreman for the March 1993 panel which indicted Woodfox, the Court finds this data indisputably relevant. As Woodfox points out, his sole burden under Supreme Court law in presenting a *prima facie* case was showing evidence of significant underrepresentation of blacks on West Feliciana grand juries over a significant period of time. *Rose*, 443 U.S. at 565. While the State complains Woodfox's previous focus was "solely on the global grand jury foreperson selections of the 20th Judicial District Court," not "allegations regarding Judge Ramshur's individual selection of jurors," (Memo. in Support, Doc. 214-1, at 6), this "argument confuses [petitioner's] underlying claim with the evidence needed to prove it." *Campbell v. Louisiana*, 523 U.S. 392, 400 (1998). The sole claim has always been impermissible racial influences on the grand jury selection process. At the *prima facie* stage, Woodfox only needed to present the general evidence described above to establish the presumption of discrimination. However, if and when the State rebuts that presumption, Woodfox's evidence must dig deeper. Evidence of the particular judge's selection process, and the judge's history of making grand jury selections as indicative or not of prejudice, is precisely the type of evidence contemplated at that point in the case under the burden-shifting framework. *See, e.g., (Christopher) Guillory*, 303 F.3d at 651; *(Frank) Guillory v. Cain*, 360 Fed.Appx. 585, 587 (5th Cir. 2010) (concluding that judge's practice of randomly pulling names out of a box to select grand jurors and forepersons did not violate the Equal Protection Clause).

Moreover, little prejudice could possibly attach to Woodfox's supposedly late discovery disclosure which finally identified, via his statistical expert's report, his intention to use such data. Given that Judge Ramshur has unfortunately passed away, the State is not presented with

6

Case 3:06-cv-00789-JJB-DLD   Document 229   05/14/12   Page 6 of 9

the potential difficulty in procuring the testimony of a busy state court judge on relatively short notice. It has indicated that it will defend the underrepresentation of blacks as grand jury forepersons based on randomness, and it has not been prejudiced in its ability to do so. Additionally, the Judge Ramshur-only data is but a subset of the data presented to show the *prima facie* grand jury foreperson discrimination claim. This evidence, even if not explicitly flagged in previous stages of this litigation, was nevertheless within the knowledge of the State. The motion is therefore denied on this ground.

D.

Finally, the State objects to Woodfox's use of alleged statistical disparities in the selection of "temporary forepersons" who served as forepersons for the day while the regular foreperson was unable to attend proceedings. Unlike the Judge Ramshur-only data, this data is indeed newly presented because it does not constitute a subset of previously-used data. To the extent Woodfox presents evidence on Judge Ramshur's temporary foreperson selections in the "significant period of time" prior to Woodfox's indictment (including temporary forepersons selected during the March 1993 panel that indicted Woodfox), the Court finds this evidence potentially relevant, though likely less probative than selections for regular forepersons. To the extent Woodfox is proposing to use temporary foreperson selections by other judges or during panels subsequent to the March 1993 panel, the Court finds this evidence irrelevant in accord with its ruling in Part II.B *supra*, subject to the caveat described in footnote 3 of this Ruling. However, the Court would like further elaboration of the parties' positions on the prevalence and significance of this practice, to be provided at the hearing. The Court therefore defers ruling on this issue.

III.

Case 3:06-cv-00789-JJB-DLD   Document 229   05/14/12   Page 7 of 9

Ultimately, the State fails to provide any convincing argument that the evidence cited in Dr. Marx's report "fundamentally alters" Woodfox's grand jury foreperson discrimination claim. *See Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (acknowledging that exhaustion is met when "the substance of the federal habeas claim has been fairly presented" in state court and recognizing that "dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts") (emphasis in original) (citations and quotations omitted)). Only "evidence that places the claims in a significantly different legal posture must first be presented to the state courts." *Anderson v. Johnson*, 338 F.3d 382, 387 (5th Cir. 2003) (citation and quotations omitted).

The scenario presented to the Court is a textbook case of evidence supplementing, but not fundamentally altering, a claim. Requiring Woodfox to present to the state courts every single scintilla of evidence he had or could have had to support any aspect of his claim would eviscerate the carefully calibrated burden-shifting framework and impermissibly require him to shoulder a much greater initial burden than the *prima facie* requirements were designed to impose. The state courts had their opportunity to pass on the merits of Woodfox's *prima facie* case, and they impermissibly found he failed to make one out. The state courts' failures do not deprive Woodfox of the opportunity to present any aspect of his rebuttal case, even though the state courts were not presented with that aspect of his claim, because Woodfox "is not at fault" for the failure to develop his claim because "his diligent efforts [were] thwarted … by the conduct of another." *(Michael) Williams v. Taylor*, 529 U.S. 420, 432 (2000).

Moreover, despite the State's intimations that the Court should be constrained from permitting certain evidence due to the federalism concerns inherent in § 2254 habeas proceedings, federal law affirmatively authorizes this Court to do so. After finding that the state

court's unreasonably applied federal law in violation of 28 U.S.C. § 2254(d)(1), (Order, Doc. 100), the Court is entitled to hold an evidentiary hearing since the state courts denied relief at a preliminary stage of the proceedings, which made further development of the underlying factual predicate to ultimately sustain his claim impossible under § 2254(e)(2). *See Price v. Cain*, 560 F.3d 284, 287 (5th Cir. 2009); *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

IV.

Accordingly, it is ORDERED that the motion *in limine* (Doc. 214) is hereby GRANTED in part and DENIED in part.

Signed in Baton Rouge, Louisiana, on May 11, 2012.

_____

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**