UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERT WOODFOX

CIVIL ACTION

VERSUS

NO. 06-789-JJB

BURL CAIN, *Warden, Louisiana State Penitentiary*, ET AL.

## RULING AND ORDER ON PRE-HEARING MOTIONS

Before the Court are two filings by petitioner Albert Woodfox: the first seeks clarification and reconsideration of this Court's recent ruling (Doc. 229) on the parties' motions in limine, and the second seeks in limine determinations regarding the admissibility of evidence at the upcoming evidentiary hearing. (Docs. 228, 231).[1]

I.

The Court declines to reconsider its ruling regarding the relevant time period for determining, at the *prima facie* stage, if the identifiable class has suffered underrepresentation. Woodfox cites *Rose v. Mitchell*, 442, U.S. 545 (1979), *Crandell v. Cain*, 421 F.Supp.2d 928 (W.D. La. 2004), *Mosley v. Dretke*, 370 F.3d 467 (5th Cir. 2004), and *Louisiana v. Langley*, 813 So.2d 356 (La. 2002) to support his contention that grand jury panels subsequent to the one indicting him may be taken into consideration when assessing his *prima facie* claim. These authorities are inapposite. *Rose* did not explicitly utilize subsequent grand juries to base its decision; rather, it stated that "even assuming the period 1951-1973 is the significant one for purposes of this case," the evidence offered did not suffice for a *prima facie* case for a person indicted in 1972. 443 U.S. at 570. Thus, *Rose* did not hold that the composition of subsequent

---

[1] The State has also filed a memorandum (Doc. 230) objecting to certain proposed exhibits and testimony listed by Woodfox in his pre-hearing disclosures. However, unlike Woodfox, the State does not attach supporting evidence or point to documents already in the record. Thus, because the State's memo appears calculated to serve as a guide for live objections at the hearing rather than seeking a pre-hearing ruling, the Court does not consider it here.

1

panels is admissible or relevant. Despite Woodfox's contentions to the contrary, neither did *Crandell*. Rather, the magistrate judge in that case, centered around an indictment in 1989, explicitly found that "the period from 1965 to [the petitioner's] indictment in 1989" afforded "a complete and informative view" of the record of grand juror foreperson selection. 421 F.Supp.2d at 935-36. Later in the opinion, the court simply rounded off to the next convenient interval for illustrative purposes to show that "[o]f the approximately 50 foremen selected in the 25 year period from 1965 to 1990, not one was black." *Id.* at 936. *Crandell* thus undermines rather than supports Woodfox. *Mosley* shows nothing to the contrary. There, an indictment issued in August 1994, and the court took into consideration the 63 panels composed between 1984 and the end of 1994, but there was no indication from that opinion that a subsequent panel was seated after the indictment but before the end of 1994. *Langley*, of course, is not binding on this court because decisions from the Louisiana Supreme Court only control in *Erie* situations when this Court sits in diversity jurisdiction, not in a habeas case. And while *Taylor v. Louisiana*, 419 U.S. 522 (1974) intimated that the evidence before the Court on a Sixth and Fourteenth Amendment petit jury composition claim included petit juries composed after the start of the defendant's trial, that was not an issue before the Court as it is here.

II.

A.

As previously stated, the relevant time period for analyzing grand jury foreperson discrimination at the *prima facie* stage begins in 1980 and runs to the March 1993 panel that indicted Woodfox. *Ray v. Cain*, No. 01-31406, 71 Fed.Appx. 442 (5th Cir. June 11, 2003); *Guice v. Fortenberry*, 722 F.2d 276, 278 (5th Cir. 1984). To the extent that Woodfox's *prima facie* case at the state court level relied on the three panels subsequent to his indictment, it is

2

irrelevant because the Court has already concluded he established his *prima facie* case, and the inclusion or exclusion of those three panels would not affect that finding.

Woodfox reasonably responds that, although governing law requires evidence leading up to the indictment, evidence of selections made after the indictment in question still bear on the issue of discriminatory intent. It is certainly true that a previously held *and subsequently continued* pattern or practice of excluding blacks from foreperson service is more likely to prove discriminatory intent than showing such a pattern leading up to the indictment in question alone. Subsequent actions may confirm the existence of an initial practice, or they may dispel it, as was the case in *Guillory v. Cain*, 303 F.3d 647 (5th Cir. 2002) (permitting evidence from subsequent grand jury panels only when necessary to establish a *prima facie* case). But that is simply not part of the *prima facie* case clearly established by Supreme Court and Fifth Circuit law. The burden at that stage (which has already been proven in this case) focuses on the actions and practices in the jurisdiction in question prior to and including the indictment in question.

B.

The State's shifted burden requires it to show race-neutral *procedures*, not simply protestations of lack of subjective invidious intent. *See, e.g., Alexander v. Louisiana*, 405 U.S. 625, 632 (1972); *Guice v. Fortenberry*, 722 F.2d 276, 280 (5th Cir. 1984). While the testimony of the relevant official responsible may in fact show a racially neutral selection procedure was used, it is the use in fact of such a procedure, and not the testimony of the responsible official by itself, that rebuts the *prima facie* case. *Johnson v. Puckett*, 929 F.2d 1067, 1073 (5th Cir. 1991). Nothing in the State's shifted burden authorizes reference to anything other than the procedures

3

actually used in selecting the panel that indicted petitioner, and therefore references to foreperson selections on subsequent grand jury panels are inappropriate at that stage as well.[2]

The State will likely base its case on statistical randomness and may also attempt to show Judge Ramshur's selection was not based on discriminatory intent. If the State's explanation in and of itself suffices to demonstrate randomness, the State will have satisfied its burden of producing a race-neutral explanation for the selection procedure used (since Judge Ramshur's testimony is obviously not available). But insofar as the State will rely on statistical proof of randomness, its proof should be confined to rebutting the *prima facie* case, which means using statistics confined to the time period from 1980 to March 1993.

Insofar as the State will attempt to show Judge Ramshur's intent in making the selection in question, the Court must deal with several disputes regarding the type of evidence admissible for that purpose.

The State intends to introduce as witnesses three character witnesses: Judge Ramshur's widow and two black former employees of the Ramshurs, one of whom was apparently raised by the Ramshurs like a son for a few years. As their depositions indicate, this testimony will be proffered for the purpose of showing Judge Ramshur's lack of racism. (*See* Colleen Ramshur Deposition, Doc. 228-2; Alfonse Lewis Deposition, Doc. 228-3; Daron Ford Deposition, Doc. 228-4). But this type of evidence cannot be introduced. Federal Rule of Evidence 404(a)(1) states, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Thus, whether or not Judge Ramshur generally harbored racist sentiments or treated certain members of Woodfox's class in a certain manner simply cannot be introduced to show whether Judge

---

[2] Of course, the State may also respond to and attack the validity of the statistics used by Woodfox to make his *prima facie* showing.

Ramshur acted in the same way when appointing a grand jury foreperson. Likewise, the defense of lack of discriminatory intent on the specific occasion in question does not constitute "character or character trait" for purposes of Fed. Rule Evid. 405(b). When attempting to understand Judge Ramshur's intent when appointing the grand jury foreperson for the March 1993 panel, it is his state of mind, not his general character or a specific character trait, into which the Court must inquire. *See Johnson v. Pistilli*, No. 95-C-6424, 1996 WL 587554, at **2-4 (N.D. Ill. Oct. 8, 1996). Thus, the expected testimony of Colleen Ramshur, Alfonse Lewis, and Daron Ford cannot satisfy Fed. Rule Evid. 404(a).

The testimony of Douglas Moreau must also be ruled in admissible. The State is expected to offer him to provide background on the jury selection process during the relevant time period. But the general process of selecting forepersons is clear in this case. Neither party contends that the process involved anything other than individualized, discretionary choices made by the selecting judge. Indeed, the Court may take judicial notice of that process because it was described in *Campbell v. Louisiana*, 523 U.S. 392 (1998). Moreau does not have personal knowledge of Judge Ramshur's March 1993 selection, and thus his testimony is simply not relevant to the task at hand during the State's rebuttal case and cannot therefore be introduced. Fed. Rule Evid. 402. The Court remains open to permitting Moreau to testify on other matters if they are shown to be relevant and otherwise admissible.

There may well be evidence which directly shows Judge Ramshur's state of mind at the time of the appointment in question, such as the transcript of that particular proceeding. There may also be transcripts from other relevant grand jury foreperson selections which show what factors he used to make the foreperson selection. This type of evidence—not the conjecture of

5

other, similarly situated officials or the character evidence from his family—is what the law demands.

C.

If and when the State's production rebuts the *prima facie* case, the presumption of discrimination appearing from the statistical *prima facie* case disappears, and at that point Woodfox is entitled to introduce evidence to meet his ultimate burden of persuading the Court as to Judge Ramshur's discriminatory intent in making foreperson selections. As the Court has previously ruled, that inquiry will narrow to Judge Ramshur's actions surrounding grand jury foreperson selections during his time on the bench. Woodfox may also show that the State's statistic rebuttal is false or unworthy of credence, just as he may show the allegedly race-neutral procedures were in fact pretext for discrimination.

Thus, evidence relating to Judge Ramshur's selections up to and including the March 1993 panel will be most relevant, but at that point, since the burden of ultimate persuasion will rest with Woodfox, he may introduce evidence outside the parameters case law has established for the *prima facie* case. Subsequent selections of grand jury forepersons after March 1993, including those of temporary forepersons and those from East Feliciana Parish, are all relevant to the ultimate question of whether Judge Ramshur's selection of the March 1993 foreperson was impermissibly tainted with racial elements. Because the State would be prejudiced from evidence introduced outside the *prima facie* time period (which it would have no occasion to introduce at the second stage of the framework), it will also be permitted to introduce such evidence when and if the third step is reached.

This clarification should help the parties tailor their expectations of what evidence will be presented and in what order.

6

Additionally, there are several small pieces of evidence whose admissibility the Court must address. The biography of Judge Ramshur is both irrelevant and hearsay, and therefore must be excluded. (*See* State's Exhibit List, Doc. 228-1, at 7). Judge Kline has not been tendered as an expert, and therefore his biography/resume must also be excluded on the same grounds. (*Id.*). Judge Ramshur's law review articles may be excepted from the hearsay rule under the ancient documents exception, but they are also likely irrelevant. (*Id.*). Likewise, evidence bearing on Judge Ramshur's personal history, such as his funeral guestbook, obituary, funeral notice, family photographs, and other similar documents are simply unrelated to the task at hand and therefore irrelevant under the Federal Rules of Evidence.

The parties also have filed dueling motions to exclude an expert from the other side. Specifically, Woodfox filed a *Daubert* motion to exclude the testimony of the State's expert demorather, Gregory Rigamer. (Doc. 228 at 11-17). The State filed a *Daubert* motion to exclude the testimony of Woodfox's expert on race relations, Orville Vernon Burton. (Doc. 235). The Court will defer ruling on these issues until the hearing.

Case 3:06-cv-00789-JJB-DLD   Document 237   05/22/12   Page 7 of 8

IV.

Accordingly, petitioner Albert Woodfox's motion for clarification and reconsideration (Doc. 231) is GRANTED in part and DENIED in part.

Woodfox's motion in limine (Doc. 228) is GRANTED in part and DENIED in part. The State's objections to Woodfox's proffered evidence (Doc. 230) is deferred until the hearing.

The State's motion in limine (Doc. 235) is deferred until the hearing. Thus, the State's motion for expedited hearing on the motion in limine (Doc. 236) is DENIED.

Signed in Baton Rouge, Louisiana, on May 22, 2012.

_____

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**