UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ALBERT WOODFOX

CIVIL ACTION NO. 06-789-JJB-RLB

VERSUS

BURL CAIN, WARDEN OF THE LOUISIANA
STATE PENITENTIARY, ET AL.

## RULING

Before this Court is the pending Motion (doc. 279) for Rule 23(c) release of Petitioner, Albert Woodfox. Briefs were filed in response to this motion and were considered by this Court. Subsequently, a motion hearing on this matter was held before this Court on March 2, 2015.

## Procedural Background

This case is riddled with a complex history of fact and procedure. As previous opinions have thoroughly recited the history, this ruling recaps only that which is relevant to the issue of Mr. Woodfox's release. In 1972, Mr. Woodfox was an inmate at Angola, the Louisiana State Penitentiary, where he was serving a fifty-year-sentence for armed robbery. In April of 1972, Brent Miller, a prison guard at the penitentiary, was killed. Mr. Woodfox was charged as one of the assailants, and shortly after, he was placed in solitary confinement pending trial. Mr. Woodfox was originally convicted of second degree murder in 1973, but that conviction was later overturned during state post-conviction proceedings on several grounds.[1] On May 27, 1992 the Louisiana Eighteenth Judicial District Court found that Mr. Woodfox was "denied his constitutional right of effective assistance of counsel."[2] Mr. Woodfox's conviction of March 7,

---

[1] See 18th JDC Order issued on May 27, 1992.
[2] "Mr. Woodfox's motion to quash the indictment, filed in proper person, was never pursued by his hired counsel who apparently made no effort to check into the status of the motion even though he knew it had been filed by his client. This constitutes error on the part of counsel so serious that the conviction cannot be trusted. If counsel had

1973 was reversed on the grounds that the "conviction was obtained on the basis of an unconstitutional indictment." *Id*. Mr. Woodfox was then indicted for the second time in 1993 and tried for the second time in 1998. The 1998 trial also resulted in a conviction for second degree murder. After exhausting all state level direct appeals, Mr. Woodfox began pursuing post-conviction relief at the state level. Mr. Woodfox failed to obtain relief from the state district post-conviction court. Mr. Woodfox then filed a writ application with the Louisiana First Circuit, which was denied on August 8, 2005, and then with the Louisiana Supreme Court, which was denied on September 29, 2006.

The current case surrounds Mr. Woodfox's petition for federal habeas corpus relief, which was filed on October 11, 2006. Mr. Woodfox made several claims for relief in his petition. This Court adopted the magistrate judge's report and granted his petition on multiple grounds, namely that defense counsel in the 1998 trial was ineffective (doc. 48). The State appealed to the Fifth Circuit, which vacated this Court's initial judgment based upon the highly deferential review mandated by Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). On remand, this Court then considered the remaining grounds asserted for habeas corpus relief, namely discrimination in the selection of the grand jury and its foreperson. This Court then granted habeas relief on this ground, and the State appealed to the Fifth Circuit. On November 20, 2014, the Fifth Circuit affirmed this Court's granting of habeas relief and issued a mandate to this effect on February 11, 2015 (doc. 281). In its mandate, the Fifth Circuit remanded the case back to this Court "for further proceedings consistent with [its] opinion" (doc. 281, at 39). The State filed a petition for *certiorari* with the United States Supreme Court, appealing the Fifth Circuit's mandate, April 27, 2015.

---

pursued the motion, the indictment would have been quashed as this Court quashed the indictments of the petitioner's co-defendants which were obtained by the same unconstitutionally impaneled grand jury." *Id*.

The release of a successful habeas petitioner, like Mr. Woodfox, is before this Court in two different respects. First, in defining his habeas relief, this Court considers releasing Mr. Woodfox by ordering a writ, unconditional or conditional, of habeas corpus. Second, the State seeks a stay of any order releasing Mr. Woodfox and barring retrial pending an appeal by the State. In the meantime, in a preemptive strike, the State has had Mr. Woodfox rearrested and reindicted. Mr. Woodfox sits indicted for a third time for the charge of murder surrounding the killing of Brent Miller in 1972. For reasons explained below, it should be stressed that Mr. Woodfox's third state indictment is not before this Court for review. The two issues argued, orally and in writing, before this Court concern the habeas corpus relief Mr. Woodfox first sought in this Court in 2006.

## Analysis

### A. *Defining Habeas Corpus Relief under the Jurisprudence*

The Supreme Court has long instructed that habeas corpus relief must be applied with an eye toward "the ends of justice." *Sanders v. United States,* 373 U.S. 1, 12, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). It also has recognized that federal courts have "broad discretion" in fashioning an appropriate remedy upon a grant of habeas corpus relief. *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The general habeas corpus statute, 28 U.S.C. § 2243, authorizes district courts to dispose of a habeas petition "as law and justice require." Indeed, "a federal court possesses [the] power to grant *any* form of relief necessary to satisfy the requirement of justice." *Levy v. Dillon,* 415 F.2d 1263, 1265 (10th Cir. 1969) (emphasis added). It is far more common for a habeas court granting relief to issue a conditional writ. Generally, courts "allow for the release of a prisoner subject to the state's right to detain him on the underlying indictment." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). Of course,

the underlying constitutional violation found in this case stems from the discriminatory selection of a grand jury foreperson. Therefore, detaining Mr. Woodfox on what has been found to be an invalid indictment is not a just option for the State.

While less common, the broad discretion granted to a federal habeas court gives it the power to award a particularly "extraordinary remedy": an order that unconditionally releases the habeas petitioner from custody and bars any retrial in state court. *Lopez v. Miller*, 915 F. Supp. 2d 373, 432 (E.D.N.Y. 2013) (quoting *Simmons v. Reynolds,* 898 F.2d 865, 869 (2d Cir. 1990)). Federal habeas courts extend such an extraordinary remedy in the rarest of circumstances, including, but not limited to, the following situations:

> (1) where the act of retrial itself would violate petitioner's constitutional rights, for example, by subjecting him to double jeopardy; (2) where a conditional writ has issued and the petitioner has not been retried within the time period specified by the court; and (3) "where the petitioners had served extended and potentially unjustifiable periods of incarceration before the writ was granted."

*Lopez*, 915 F. Supp. 2d at 432-33 (quoting *Morales v. Portuondo*, 165 F. Supp. 2d 601, 609 (S.D.N.Y. 2001)). The Fifth Circuit has identified two categories of rare and extraordinary cases where "law and justice" require the permanent discharge of a petitioner: either the circumstances of the case involve a "constitutional violation [that] cannot be remedied by another trial" or "other exceptional circumstances [must] exist such that the holding of a new trial would be unjust." *Jones v. Cain*, 600 F.3d 527, 542 (5th Cir. 2010) (quoting *Capps v. Sullivan*, 13 F.3d 350, 352-53 (10th Cir. 1993). In *Jones*, the Fifth Circuit focused on the first category considering the "nature of the constitutional violation and whether it could theoretically be remedied by a new trial, or whether the very act of holding a new trial would be unjust" (doc. 309, at 12). At least one other court has relied on the *Jones* ruling as laying out two alternatives grounds that would justify an unconditional writ barring retrial. *Wilson v. Beard*, 2012 WL 1382447, *12

(E.D. Pa. April 20, 2012) (citing *Jones*, 600 F.3d 542). This Court, too, finds that the language in *Jones* provides two alternative grounds for granting the extraordinary remedy of an unconditional writ of habeas corpus barring retrial.

       i.      *First Alternative: Retrial Cannot Remedy Underlying Constitutional Violation*

This Court has previously determined that Mr. Woodfox's petition should be granted on the grounds of discrimination in the selection of the grand jury foreperson, and this ruling has been affirmed by the Fifth Circuit (doc. 274). Considering this constitutional violation, this Court must ask whether the violation is one that cannot be remedied by the prosecution of Mr. Woodfox for a third time. Neither side cites a case where a federal habeas court has barred re-prosecution of a state conviction obtained through the discriminatory selection a of a grand jury foreperson. This Court must look to cases exercising the extreme remedy on other grounds for guidance. Obviously, a retrial should not be allowed if it "would unavoidably result in the recurrence of the very same underlying constitutional violation." *Barker v. Wingo*, 407 U.S. 667 (1982) (relief granted for violation of Sixth Amendment speedy trial right)). Here, the 1993 indictment could, conceivably, be corrected by the re-arrest and reindictment of Mr. Woodfox.[3]

       ii.     *Second Alternative: Exceptional Circumstances Exist such that Holding a New Trial would be Unjust*

The second alternative requires consideration far more broad than looking to the underlying constitutional violation. The scope of consideration expands to all exceptional circumstances surrounding this case. This Court's analysis considers a number of the rare cases that have granted the extraordinary remedy, the circumstances surrounding Mr. Woodfox case that he proposes are exceptional and justify the extraordinary remedy, and the arguments by the State for why such an extraordinary remedy is not warranted.

---

[3] As noted earlier, the State obtaining a third indictment has no direct bearing on the Court's analysis.

a.  *Cases Barring Retrial as a Remedy*

The parties have failed to present any Fifth Circuit jurisprudence to show what circumstances are sufficient required to justify the issuance of an unconditional writ barring retrial. Nevertheless, in *Jones v. Cain*, the Fifth Circuit instructs federal habeas courts "to stop a state criminal proceeding" when "exceptional circumstances exist such that the holding of a new trial would be unjust." 600 F.3d 527, 542 (5th Cir. 2010) (internal citations omitted). Courts from other circuits have considered the totality of circumstances presented to them when defining habeas relief, and they have cited to *Jones* as supporting the court's power to consider exceptional circumstances. As such, the following cases provide guidance for this Court when considering the circumstances of Mr. Woodfox.

In *Schuster v. Vincent*, the Second Circuit opted to permanently discharge the petitioner after granting his writ of habeas corpus. 524 F.2d 153 (2d Cir. 1975). There was no question of petitioner's guilt in *Schuster*, as to killing his wife and injuring her attorney during divorce negotiations. In 1941, ten years into serving his sentence, petitioner was transferred from state prison to a state hospital for the insane "in apparent retaliation for his efforts to expose prison corruption." *Id*. at 154. In 1969, nearly thirty years after this transfer, the Second Circuit found that the procedures for involuntarily transferring the petitioner were constitutionally defective. *U.S. ex rel. Schuster v. Vincent*, 410 F.2d 1071, 1081 (2d Cir. 1969). It was then, when the Second Circuit ordered petitioner's transfer back to prison for the holding of a parole hearing. *Id*. at 1089. It took another three years before the petitioner was actually transferred to a prison for sane inmates. *U.S. ex rel. Schuster v. Vincent*, 524 F.2d 153, 154 (2d Cir. 1975). Even when the petitioner was transferred back to a prison for the sane, it was "orchestrated in a matter that thwarted [defendant's] 31-year effort to compel the State publicly to acknowledge his sanity and

its own prior grave errors." *Id*. When the petitioner sought habeas relief, the State objected to the issuance of an unconditional writ because, under the operative state law, persons convicted of murder were ineligible for absolute discharge before completing five years of unrevoked parole. *Id*. at 155. Notwithstanding this objection, the Second Circuit ordered a permanent discharge of the petitioner, who was then seventy-years-old at that time. *Id*. at 162.

As the State points out, there were other additional factors involved in *Schuster*, namely that the State delayed implementing the court's mandate to transfer the petitioner back to prison for three years. *Id*. at 161. Mr. Woodfox concedes that *Schuster* does not rely explicitly on the exceptional circumstances doctrine (doc. 306, at 28), but it did look to all of the extraordinary circumstances of the case in ultimately granting extraordinary relief. *Schuster*, 524 F.2d at 159. Regardless, it is clear that the Second Circuit considered a number of factors, many of which are comparable to Mr. Woodfox's circumstances.

In *Morales v. Portuondo* ("*Morales II*"), a decision preceding the *Jones* "exceptional circumstances" test established by the Fifth Circuit, the court delineated a federal court's power to bar retrial for a successful habeas petitioner in a similar fashion to the categories in *Jones*:

> (1) where the act of retrial itself would violate petitioner's constitutional rights, for example, by subjecting him to double jeopardy; (2) where a conditional writ has issued and the petitioner has not been retried within the time period specified by the court; and (3) "where the petitioners had served extended and potentially unjustifiable periods of incarceration before the writ was granted."

165 F. Supp. 2d 601, at 609 (quoting *Latzer v. Abrams,* 615 F. Supp. 1226, 1230 (E.D.N.Y.1985)); *see, e.g., United States ex rel. Schuster v. Vincent,* 524 F.2d 153, 154, 158, 162 (2d Cir.1975).[4] The underlying constitutional defect found by the habeas court in *Morales II* was that the trial court had declined to order a new trial in the face of evidence suggesting that

---

[4] Although the *Morales II* ruling was issued in 2001, nearly a decade before *Jones* in 2010, at least one court has quoted language from both as supporting the federal habeas court's authority to end a state criminal proceeding as part of its habeas remedy. *See Lopez v. Miller*, 915 F. Supp. 2d 373, at 433 (E.D.N.Y. 2013).

another person made statements confessing to the crime and exonerating the petitioner. *Id*. at 602, citing *Morales v. Portuondo*, 154 F. Supp. 2d 706 (S.D.N.Y.)("*Morales I*"). In *Morales II*, the habeas court considered several factors before barring re-prosecution as part of the petitioner's relief: the evidence suggesting petitioner's innocence, the underlying constitutional defect that could not be corrected given the fifteen year lapse in time, evidence of troubling conduct by the State, and the potentially unjustified periods of incarceration. 165 F. Supp. 2d at 609.

The State urges that *Morales II* is inapposite to Mr. Woodfox's case because petitioner-Morales had a "compelling claim of actual innocence" (doc. 309, at 17). Mr. Woodfox relies on *Morales II* because he finds his case comparable on the grounds of prejudice by the time delay, evidence of troubling conduct by the State, and potentially unjustified periods of incarceration, and for evidence of Mr. Woodfox's innocence. Nevertheless, it is clear that the Southern District of New York considered a number of factors, many of which are present in Mr. Woodfox's case.

In *Hannon v. Maschner*, the Tenth Circuit was presented with a habeas petitioner who successfully argued before the district court to having ineffective assistance of counsel in his state court criminal proceedings. 981 F.2d 1142, 1143 (10th Cir. 1992). In granting the petitioner habeas relief, the federal district court issued an unconditional writ of release. *Id*. Due to ineffective assistance of counsel, the petitioner had lost his right to file a direct appeal. *Id*. at 1145. For a period of thirty-three years, the state courts refused to provide the equivalent of direct appellate review of the merits of petitioner-Hannon's claim. *Id*. Considering the delay in time since the original conviction, the federal district court granted unconditional release. *Id*. On appeal, the State argued that the district court erred by granting release that denied the State any opportunity to obtain appellate review of the petitioner's claims. *Id*. Upon review for abuse of

discretion, the Tenth Circuit affirmed the district court's grant of the unconditional writ. *Id*. The Tenth Circuit held that, if the district court had opted to allow a direct appeal thirty-three years after the sentence, it "would not vitiate the prejudice to the petitioner from the denial of direct appellate review." *Id*.

Mr. Woodfox relies on *Hannon* as an example of a court that granted an unconditional writ and, in deciding to do so, considered how the successful habeas petitioner had been prejudiced by the thirty-three year delay. Mr. Woodfox was first convicted in 1972, and, as this Court sits here in 2015, there is no valid conviction against Mr. Woodfox. Additionally, Mr. Woodfox has served over forty years in solitary confinement. The State tries to distinguish the prejudice of time delay in *Hannon* from that facing Mr. Woodfox by stating that the prejudice in Mr. Woodfox's case is "an unconstitutionally-obtained indictment" (doc. 298 at 8).

The Court agrees with Mr. Woodfox that the time involved here results in extreme prejudice. The State understates the extent of the prejudice done to Mr. Woodfox. The unconstitutionally obtained indictment is the ground that his habeas relief was granted, but a habeas court must consider all of the circumstances involved when defining relief. The prejudice of an unconstitutionally obtained indictment is only one of the relevant circumstances.

In *D'Ambrosio v. Bagley* ("*D'Ambrosio II*"), the Sixth Circuit reviewed the district court's initial granting of a conditional writ, which was based on the district court's "confidence in the trial court's ability to provide D'Ambrosio with a fair retrial." 656 F.3d 379 (6th Cir. 2011) (citing *D'Ambrosio v. Bagley*, 619 F. Supp. 2d. 428, 460 (N.D. Ohio 2009)("*D'Ambrosio I*")). Before the conditions of the writ were met, the prosecution's key eyewitness passed away. *Id*. at 382. The district court then concluded that the death of the prosecution's star witness "tipped the balance in favor of barring re-prosecution" and issued a writ to that effect. *Id*. at 383.

Mr. Woodfox does not contend his circumstances are identical to *D'Ambrosio* or that a key eyewitness has died since the second criminal trial against him. The State correctly notes that the ultimate issue for resolution in *D'Ambrosio* was whether the court had jurisdiction to bar retrial after previously issuing a conditional writ (doc. 309, at 19). Nevertheless, *D'Ambrosio* establishes that many factors are to be considered in determining the type of habeas relief to be granted; and, in some cases, the availability of witnesses is a particularly important factor (doc. 306, at 15). When the habeas court issued the original writ, twenty years had passed since the underlying offense had been committed. It should be noted that an eyewitness's death was sufficient in and of itself to tip the balance to prohibit re-prosecution of *D'Ambrosio*.

In *Latzer v. Abrams*, the Eastern District of New York granted the extraordinary remedy of barring retrial where the petitioner had already served almost the maximum period of which he could have been sentenced if he had been reconvicted. 615 F. Supp. 1226, 1231 (E.D.N.Y. 1985). The State cites this case as an example of an "exceptional circumstance" that would bar re-prosecution (doc. 309, at 12). The State argues that, because Mr. Woodfox has not served the maximum possible sentence, a comparison cannot be drawn to the reasoning in *Latzer*. This Court disagrees with this analysis. *Latzer* makes it clear that service of a potentially unjustifiable period of incarceration is a factor to be considered when barring retrial as part of habeas relief. *See Morales II*, 165 F. Supp. 2d at 609 (quoting *Latzer*, 615 F. Supp. 1226, 1230 (E.D.N.Y. 1985). Unlike *Latzer*, Mr. Woodfox has not served the maximum period of time possible for the crime of second-degree murder. However, the Court finds that the absence of this one factor does not necessarily defeat Mr. Woodfox's claim of exceptional circumstances.

In *State v. Tassin*, the Louisiana Fifth Circuit relied on *Jones* for the principal that a court has the power to grant the extraordinary remedy of barring retrial in exceptional circumstances.

129 So.3d 1235 (La. App. 5 Cir. 12/19/13). The Louisiana Fifth Circuit considered that the case had already been before a federal habeas court that had the authority to bar retrial but opted not to. *Id*. at 1266 (citing *Jones v. Cain*, 600 F.3d 527, 542 (5th Cir. 2010)).  The petitioner, seeking a bar to re-prosecution, presented the Louisiana Fifth Circuit with the following circumstances: twenty-two years spent on death row, limited ability to present a defense because twenty-four years had lapsed since the commission of the offense, and the government persistently engaging in misconduct. The Louisiana Fifth Circuit found that the circumstances presented did not reach the high bar of "exceptional circumstances." *Id*. at 1266. The Louisiana Fifth Circuit also weighed circumstances against Tassin: overwhelming evidence of his guilt existed; all eyewitnesses to the crime were available and did testify at his second trial; unavailable witnesses were not eyewitnesses; petitioner's conviction was overturned because of the misleading nature of Ms. Tassin's testimony that the State did not correct at trial, but this error was corrected on retrial. *Id*. Mr. Woodfox points to this case, albeit a state court decision, to demonstrate how the factors weighing against the petitioner in *Tassin* are not present in the circumstances surrounding Mr. Woodfox.

The cases show that a variety of circumstances may work together to justify an extraordinary remedy under the particular circumstances of that case. In addition to providing a range of circumstances for this Court to consider, these cases highlight this Court's broad discretion in defining habeas relief and, specifically, its authority to grant an unconditional writ barring retrial when exceptional circumstances exist.

> b.  *Purported Exceptional Circumstances of Mr. Woodfox*

Mr. Woodfox argues that "the constellation of extraordinary circumstances present here is so remarkable that, as even the State appreciates, '[t]here's just no case law to follow, there's

no case law that comes close to this set of facts'" (doc. 306, at 27, quoting Hearing Transcript 03/02/2015 at 73:12-13). The foregoing cases establish that the very case generating the underlying facts to warrant an extraordinary remedy is rare by nature. The reported cases consider all of the varying circumstances to determine if the case is one of exceptional circumstances that may justify an extraordinary remedy. There is no one consistent and determinative factor. This Court must look beyond the underlying constitutional violation. We now consider each factor that is purported to make Mr. Woodfox's circumstances exceptional such that law and justice require an extraordinary remedy.

*i.   Factors Comparable to Other Cases Granting Extraordinary Remedy*

1.   <u>Mr. Woodfox's Age and Poor Health</u>

Although not emphasized as being a determinative factor, the *Schuster* court did consider the age of the petitioner at the time when the court decided to grant his permanent discharge. *Schuster v. Vincent*, 524 F.2d 153, 162 (2d Cir. 1975). Similarly, the age and poor health of Mr. Woodfox, while not determinative, are certainly important factors for this Court to consider (doc. 306, at 13). It is uncontested that Mr. Woodfox is now sixty-eight-years-old and in poor health (doc. 306, at 30). At least as far back as 2008, this Court recognized that Mr. Woodfox was "a frail, sickly, middle aged man who has had an exemplary conduct record for over the last twenty years" (doc. 75, at 12). Mr. Woodfox has a long history of chronic health ailments, namely, high blood pressure, diabetes, heart disease, kidney disease, and a liver ailment that puts Mr. Woodfox at high risk for developing cancer. *See*, *e.g.*, *Wilkerson v. Cain*, No. 00-304 (M.D. La. Aug. 13, 2007).

2.   <u>Time Prejudices Mr. Woodfox's Ability to Present a Defense</u>

The lapse of time involved in this case also presents an exceptional circumstance. Mr. Miller was killed in 1972. Mr. Woodfox was first convicted on charges for the murder in 1973. The first conviction was overturned in 1992. Six years elapsed from when Mr. Woodfox's first conviction was overturned until the State brought Mr. Woodfox to trial for the second time (doc. 306, at 31).[5] By the time of Mr. Woodfox's second trial in 1998, "many of the witnesses had died and physical evidence had been lost" (doc. 83, at 3-4, Fifth Circuit 2010 Mandate, No. 08-30958). At this time, over forty years have passed since the crime. Of Mr. Woodfox's original thirteen witnesses, at least six have died, possibly seven (doc. 306, at 18). Since the second trial in 1998, seven more of the State's fifteen witnesses have passed away. *Id*. at 17. Even if transcripts of previous testimony were read into the record of a potential third trial, this is not ideal. A third jury would be unable to consider the live testimony of at least these thirteen witnesses to assess credibility. These weaknesses in eyewitness testimony could perhaps be minimized in a case that relies largely on physical evidence. However, it has already been noted by the Fifth Circuit that the "state's case against Woodfox was built largely on eyewitness testimony" (doc. 83, at 7, Fifth Circuit 2010 Mandate, No. 08-20958).

The most essential testimony for the State's case against Mr. Woodfox was from a fellow inmate, Hezekiah Brown. Mr. Brown's testimony was so important to the State's case that the State has even acknowledged that it would have had no case without his testimony (doc. 306, at 19). Yet, Mr. Brown only testified live as an eyewitness during the 1973 trial and was deceased by the time of the 1998 trial. Mr. Brown's original 1973 testimony transcript was read into the record during the 1998 trial. Mr. Woodfox's then-counsel did not object to the reading of the

---

[5] Mr. Woodfox urges that it is unlikely he would survive "another 17-year long round of appellate and post-conviction review before vindicating his rights" for potentially a third time (doc. 306, at 31). In the original motion for release, Mr. Woodfox sought release pending appellate review so he could "make the best of whatever years he has left" (doc. 279-1, at 24).

testimony, despite the fact that concerns about Mr. Brown being offered inducements for his testimony were raised following the 1973 trial. Throughout the history of Mr. Woodfox's post-conviction proceedings, the issue of how Mr. Brown's testimony was used in the second trial was argued as grounds for granting a habeas petition in and of itself. In these habeas proceedings, Mr. Woodfox has argued that his Confrontation Clause rights were violated by his counsel failing to object. The Fifth Circuit found that the Confrontation Clause argument was not exhausted at the state level (doc. 83, at 4, Fifth Circuit 2010 Mandate, No. 08-20958). Alternatively, the Fifth Circuit concluded that even if the claim was exhausted at the state level, this Court was required to give the state judgment deference in finding that Mr. Woodfox was not entitled to relief (doc. 83, at 24, Fifth Circuit 2010 Mandate, No. 08-20958).

While Mr. Woodfox was granted habeas relief on grounds independent of these potential concerns with a third trial, this Court, in considering whether there are exceptional circumstances here, must look to all facts. There is no dispute that when first questioned about the murder on April 17, 1972, Mr. Brown claimed to have an alibi placing him in a different part of the prison (doc. 83, at 7, Fifth Circuit 2010 Mandate, No. 08-20958). The second time he was questioned, two days after his first questioning, Mr. Brown gave very different testimony that incriminated Mr. Woodfox. *Id*. at 7. There is no dispute that Mr. Brown was deceased by the second trial. There is no dispute that the most incriminating eyewitness testimony the second jury was presented with came from the reading of a 1973 witness transcript. There is no dispute that Mr. Brown was subject to cross-examination only once, and that was in the 1973 trial that ultimately resulted in an overturned conviction.

Another disturbing fact related to Mr. Brown's 1973 testimony involves evidence of possible inducements and threats to Mr. Brown for his testimony against Mr. Woodfox in 1973.

This evidence was uncovered after the 1973 trial. Mr. Brown was obviously never cross-examined as to this new evidence because he was deceased by the time of the second trial. Mr. Brown testified in a different, but related, matter that he faced threats of being put back into solitary confinement cells if he did not testify (doc. 279-2, Exhibit F). Mr. Brown had already spent years in solitary confinement while he was on death row. *Id*. Despite spending time on death row, Mr. Brown was ultimately pardoned for serial rape convictions (doc. 33, at 18-19, Report and Recommendation adopted by doc. 35). It was not until the second trial in 1998 that Warden Henderson was called to testify to the fact that he had made a promise to support Mr. Brown's request for a pardon prior to his 1973 testimony (doc. 83, at 8, Fifth Circuit 2010 Mandate, No. 08-20958). This Court has previously noted that there were other incentives discovered after the 1973 trial, including transfer to a minimum security area of Angola, where Mr. Brown was eventually given his own private room with a television in a separate building (doc. 33, at 18-19, n. 17, Report and Recommendation adopted by doc. 35).

Moreover, there were two other important State witnesses in the first trial: inmate Paul Fobb and inmate Joseph Richey. Mr. Fobb testified at the first trial, but was also deceased by the second trial (doc. 83, at 11, Fifth Circuit 2010 Mandate, No. 08-20958). Mr. Fobb testified to witnessing a dispute between Mr. Woodfox and Mr. Miller earlier in the month and to witnessing Mr. Woodfox leaving the crime scene shortly before Mr. Miller's body was discovered. *Id*. Despite the fact that Mr. Fobb was blind in his right eye and suffered from glaucoma in his left eye, he testified to having been able to see well enough on the day of the murder in 1972. *Id*. Only after the first trial was Mr. Woodfox able to uncover medical records in Mr. Fobb's prison file showing that Mr. Fobb was blind in his right eye and the optic nerve of his left eye was already damaged by 1968, years before the murder (doc. 306, at 22, n. 11 and doc. 15, Exhibit

30). The prognosis of Mr. Fobb's left eye in 1968 was "for progressive and irreversible diminution of visual field acuity." (doc. 15, Exhibit 30). Because Mr. Fobb was not alive at the time of the second trial, there was no opportunity for cross-examination of Mr. Fobb about these newly discovered medical records. *Id*.

Additionally, fellow inmate Mr. Richey testified in the 1973 trial to seeing Mr. Woodfox leave the dorm where the murder took place and bump into a trash cart that was being pushed by another inmate (doc. 83, at 10, Fifth Circuit 2010 Mandate, No. 08-20958). However, when Mr. Richey was first questioned about the murder, he only claimed to have seen Mr. Miller and waiting for help to arrive. *Id*. When he was interviewed for a second time, about a month later, Mr. Richey gave a new statement that matched the testimony he ultimately gave at the 1973 trial. *Id*. In exchange for his testimony, Mr. Richey was transferred to the State Police Barracks, where he "enjoyed so much freedom of movement as a minimum security trustee that he went on to commit three bank robberies" *See State v. Richey*, 364 So.2d 566 (La. 1978)). Unlike many of the State's witnesses, Mr. Richey was alive to testify at the 1998 trial and repeated a similar statement to that of his 1973 testimony. However, should Mr. Woodfox be subject to a third trial, Mr. Richey will be unavailable as he is now deceased (doc. 306, at 23).

These three witnesses highlight several things. Mr. Brown and Mr. Richey could not be cross-examined at a third trial relative to their credibility in light of their documented inducements and incentives. Mr. Fobb's eyewitness testimony has never been subject to cross-examination with regard to medical records indicating that he was blind at the time of the crime. A conviction was attainable only in light of eyewitness testimony, as the State has conceded (doc. 306, at 19), and not one of these eyewitnesses would be available for cross-examination in a third trial.

Other courts that have had Mr. Woodfox's case before them have recognized the prejudice he faces: "nearly half of the witnesses in this case (at least), including the State's star witness, Hezekiah Brown are now deceased. These deaths are especially prejudicial because Woodfox's defense is one, 'primarily of witness credibility.'" *State v. Woodfox*, No. 99 KA 2102 (La. Ct. App. 1 Cir. 06/23/00). Mr. Woodfox argues that this presents an exceptional circumstance. He asserts that this prejudice makes it "impossible for any reasonable juror to fairly draw the inference she would be required to make in order to render a verdict in this case" (doc. 306, at 25). The prejudice of time in Mr. Woodfox case far exceeds that presented in the cases considered above, all of which resulted in the barring of another trial: *Morales* (15 years), *Hannon* (33 years), or *D'Ambrosio* (20 years) (doc. 306, at 26). Mr. Woodfox persuasively argues that the death of these witnesses creates a prejudice for this successful habeas petitioner that can in no way be vitiated today.

### 3. Lack of Confidence in State's Ability to Provide a Fair Retrial

In the *Morales* case considered above, one of the factors the court considered in barring re-prosecution was troubling conduct by the government in the case. Mr. Woodfox argues that the great length of time involved here "results from the State taking unjustifiable stands against his meritorious claims for constitutional relief, for over forty years" (doc. 306, at 31). Mr. Woodfox attempts to support his argument by pointing to the time delay between the crime and a potential third trial, as well as the fact that two invalid indictments were used by the State to obtain the first two convictions. *Id.* However, the Court concludes that these circumstances do not necessarily support a claim of misconduct by the State.

Nevertheless, there are other facts of State action in the history of this case that are, at least, troubling. The Fifth Circuit was concerned by the fact that one of the State prosecutors

trying the first trial was allowed to testify in the second trial, in an effort to vouch for Mr. Brown's credibility as Mr. Brown was deceased by the time of the second trial. *Woodfox v. Cain*, 609 F.3d 774, 805 (5th Cir. 2010). Additionally, in the very matter before us, this Court has seen troubling conduct. The State attempted to render this Court's authority to decide the original motion for release under FRAP 23 as "moot." As the Fifth Circuit was preparing to issue its mandate, the State was taking action of its own. The State obtained an arrest warrant for Mr. Woodfox on February 10, 2015 (doc. 283-1). On February 11, 2015, the Fifth Circuit issued its mandate affirming this Court's grant of habeas relief to Mr. Woodfox and remanding the case to this Court. On February 12, 2015, the State obtained a third indictment against Mr. Woodfox in State court, specifically the 20th Judicial District Court (doc. 283-2), and proceeded to have Mr. Woodfox unilaterally transferred to parish prison. The Fifth Circuit has held that the government is "required" to apply for permission to transfer an inmate pending appeal. *Griffin v. Ebbert*, 751 F.3d 288, 290, n.1 (5th Cir. 2014)). The State did not file its petition for *certiorari* with the United States Supreme Court, appealing the Fifth Circuit's mandate, until April 27, 2015. The State's tactics in attempting to moot the issues gives this Court little confidence that any future actions in this matter will be handled fairly.

4. Evidence Suggesting Mr. Woodfox's Innocence

Like in *Morales*, Mr. Woodfox claims that the evidence of his actual innocence weighs in favor of an extraordinary remedy. At this time, there is no valid conviction against Mr. Woodfox for the murder of Brent Miller. The State's presenting of an "extremely thin" case was one more exceptional circumstance in *Morales* that justified the extraordinary remedy (doc. 306, at 32). This Court has said before that it "fails to see the 'overwhelming evidence' to which [the State] refers" (doc. 33, at 61). There was an abundance of physical evidence available at the crime

scene in 1972, but not one piece of physical evidence incriminated Mr. Woodfox (doc. 83, at 6, 46,  Fifth Circuit 2010 Mandate, No. 08-30958).

> Mr. Woodfox contends that the following are all indications of his innocence:
>
> (1) a statement from State's key witness Leonard Turner, admitting Mr. Woodfox was *not* involved in Miller's murder; (2) statements from two women with whom Chester Jackson (who pleaded manslaughter for the same crime) spoke about Woodfox's actual innocence upon his release; (3) a reliable scientific review of the bloody print at the scene, exculpating Woodfox; (4) evidence that severely undermines the credibility of State's three prisoner witnesses; and (5) a polygraph examination indicating that Woodfox truthfully denied involvement in the crime.

(doc. 279-1, at 24, n.4, doc. 15, and doc. 47). Evidence supporting claims of Mr. Woodfox's innocence gives this Court even more reason to question his two previously overturned convictions. Further, at least one court permanently discharged a defendant from custody despite the clear guilt of the defendant because of the seriousness of the confinement he was placed under and other exceptional circumstances. *See Schuster v. Vincent*, 524 F.2d 153 (2d Cir. 1975). This Court questions the strength of the evidence keeping Mr. Woodfox incarcerated for the murder of Mr. Miller. This factor alone would be an insufficient basis for this Court to grant an unconditional writ barring retrial. However, it is the totality of circumstances that this Court considers in determining whether Mr. Woodfox's circumstances are so exceptional as to bar retrial.

### ii.  Factors Unique to Mr. Woodfox's Circumstances

### 5.  Solitary Confinement without a Valid Conviction

In 1972, prior to the murder of Mr. Brent Miller, Mr. Woodfox was serving a sentence for armed robbery. Shortly after Mr. Miller's murder, Mr. Woodfox was placed in solitary confinement (doc. 279-1, at 7-8). With rare exception, Mr. Woodfox has remained in solitary confinement since that time. *Id*. On the few occasions that Mr. Woodfox was not in solitary confinement, he demonstrated an ability to live peacefully with others. *Id*. at 8. For over four

decades, Mr. Woodfox has been "housed in a small, single cell, in 23-hour-a-day lockdown." *Id.* at 8. In a related matter, this Court considered the type of confinement Mr. Woodfox has been subjected to and concluded that there is "no legitimate penological interest in continuing the plaintiffs' confinement in lockdown[.]" *See Wilkerson v. Stalder*, No. 00-304 (M.D. La. Aug. 13, 2007). At his current pre-trial facility, Mr. Woodfox is only allowed out of his cell three days a week and remains in 23-hour-a-day single cell confinement (doc. 306, at 30).

Not one of the cases considered in the above section, which all granted the extraordinary remedy of barring retrial, involved a defendant being incarcerated as long as Mr. Woodfox. Not one of those cases involved the detention of a petitioner in solitary confinement. Mr. Woodfox has remained in the extraordinary conditions of solitary confinement for approximately forty years now, and yet today there is no valid conviction holding him in prison, let alone solitary confinement. Last year a unanimous panel of the Fifth Circuit observed:

> [C]onsidering the duration of the solitary confinement, the severity of the restrictions, and their effectively indefinite nature, it is clear that Woodfox's continued detention in CCR constitutes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' according to any possible baseline we consider.

*Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014)).[6] This, quite obviously, is more extreme than any of the cases considered above.

6. No Comparable Case with Underlying Constitutional Violation at the Grand Jury Stage

Based on the cases considered, it is also unique to Mr. Woodfox that the underlying constitutional violation providing grounds for his habeas relief is that of an invalid indictment obtained through a discriminatory grand jury foreperson selection. The unconstitutionally obtained grand jury indictment was the second invalid indictment obtained by the State in the

---

[6] The *Lopez* court, relying on *Morales*, notes that serving an extended and potentially unjustifiable period of incarceration preceding habeas relief is a ground for issuing the extraordinary remedy of barring retrial. *Lopez v. Miller*, 915 F. Supp. 2d 373, 432-33 (E.D.N.Y. 2013).

case against Mr. Woodfox. Both indictments, obtained with regard to his 1973 and 1998 trials, were ultimately found to be unconstitutional. In considering an extraordinary remedy, other courts have expressed doubts about the trial court's ability to provide a fair retrial as a considered factor. *See D'Ambrosio v. Bagley*, 656 F.3d 379 (6th Cir. 2011). This Court recognizes that the error of an invalid indictment can, conceivably, be corrected at a retrial. However, the fact that prior indictments were both found to be unconstitutional gives this Court reason to question whether a third indictment would not suffer a similar defect. This one circumstance alone would not be enough for this Court to grant an unconditional writ barring retrial. Under the second alternative in *Jones*, this Court considers all circumstances to determine if they are so extraordinary as to justify barring retrial.

       7. <u>Mr. Woodfox Facing a Second Retrial</u>

       On the same crime, Mr. Woodfox has already been subject to a retrial. The State has been given the chance to conduct a retrial of Mr. Woodfox in an effort to fix the constitutional errors of the first trial. The first trial was found to be based on an unconstitutional indictment that was not challenged by effective counsel. Mr. Woodfox has had to endure two rounds of trial, state appeals, state post-conviction proceedings, and federal post-conviction proceedings. Despite the constitutional errors being found at relatively early stages, Mr. Woodfox saw approximately forty years between being unconstitutionally indicted and then receiving relief for such unconstitutional indictments. The first indictment was obtained shortly after the murder of Mr. Miller in 1972. The indictment was not found to be unconstitutional until 1992. The second indictment was obtained shortly after, and its unconstitutional nature was just affirmed in 2015.

A third indictment was obtained on February 12, 2015. Given the nature of our criminal justice system, Mr. Woodfox, at age sixty-eight, is facing perhaps another twenty years before a court determines if he was given a fair third trial.

All of the cases considered herein have concerned habeas relief relative to a first retrial. Unlike those cases, after Mr. Woodfox's first successful post-conviction proceeding, retrial was not barred. Thus, Mr. Woodfox was retried, giving the State the opportunity to correct all errors. Most extraordinary about Mr. Woodfox's circumstances is that he is before us now facing a potential "second retrial" or third bite at the apple for the State.

B. *States Arguments for Not Granting an Extraordinary Remedy*

The State fails to directly address each of the circumstances presented by Mr. Woodfox as exceptional. Instead, the State presents three wholly different arguments as to why this Court should not grant an unconditional writ. Not one of these three arguments is convincing.

a. *Remedy Should Match the Harm*

The State points to "the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interest." *United States v. Morrison*, 449 U.S. 361, 364 (1981). The State suggests that Mr. Woodfox's injury is limited to the discriminatory selection of a grand jury foreperson. The second *Jones* alternative, however, requires consideration of harm beyond the underlying constitutional violation. This Court considers all harm making up the exceptional circumstances in the section above.

b. *Exhaustion of State Remedies*

The State urges that the habeas court is "statutorily prohibited from barring retrial based on Woodfox's speculative, unexhausted claims that his new trial will be unfair or constitutionally

inadequate" (doc. 309, at 6). The State argues that this Court should not "interfere with ongoing state criminal proceedings based on a prediction that such proceedings will be constitutionally inadequate" and that claims must be exhausted in state court before being redressed by a federal habeas court under 28 U.S.C. § 2254(b) (doc. 309, at 13-14). Again, the State confuses issues. This Court is not resolving claims pertaining to the validity of a third trial. At this time, the Court is merely fashioning the relief that Mr. Woodfox is entitled to after a successful petition for habeas relief from his second trial. The State contends that "a federal court cannot attempt to divine the fairness or unfairness of a state prosecution that has not yet taken place" (doc. 309, at 15). The State's suggestion overlooks the jurisprudence requiring consideration of whether a retrial would be just. *See D'Ambrosio v. Bagley*, 619 F. Supp. 2d 428, 460 (N.D. Ohio 2009); *See also Wolfe v. Clarke*, 718 F.3d 277, 289 (4th Cir. 2013). While this Court may consider the possibility of prejudice from a third trial, it is all of the circumstances that are purported to be exceptional that are relevant in defining the remedy. This Court must define appropriate habeas relief by exercising its broad discretion to achieve justice.

The State points to the case of *Pitchess v. Davis*, 421 U.S. 482, 483 (1975). There, a state attempted to retry the petitioner pursuant to a conditional writ. When it became apparent that much of the physical evidence from the first trial had been destroyed, petitioner sought a modification of his conditional writ to prohibit his retrial. The district court granted petitioner's request, but this was ultimately overturned by the United States Supreme Court due to the missing evidence claim not having been properly exhausted. Mr. Woodfox is not asking this court to consider a new claim, but rather seeks a full and just remedy of the petition granted in his favor.

The State also relies on the Second Circuit's ruling in *DiSimone v. Phillips*, 518 F.3d 124 (2nd Cir. 2008). In that case, the district court granted habeas relief based on a *Brady* violation and barred re-prosecution because DiSimone could not be convicted on the remaining evidence. The Second Circuit found the district court was "exceed[ing] the authority conferred by § 2254" by barring retrial to "correc[t] state errors which had not yet been made." The Second Circuit noted that "the grant of habeas relief vacating DiSimone's conviction was not predicated on a ground that inevitably precludes retrial." It was instead grounded on a violation that was "remediable upon a future trial." Again, our circumstances are distinguishable. This Court's decision to grant an unconditional writ is not based on any prediction that the evidence at a third trial would be insufficient, but instead based on consideration of the totality of exceptional circumstances surrounding this case.

c.  *Younger Doctrine*

The State argued that "[u]nder the *Younger* doctrine, this Court cannot interfere with the State's retrial of Woodfox because Woodfox cannot demonstrate that the retrial would cause him 'irreparable injury'" (doc. 309, at 16). The *Younger* doctrine prohibits a federal court from "interfer[ing] with a pending state criminal prosecution either by injunction or declaratory judgment in the absence of extraordinary circumstances showing a threat of irreparable injury." *Kolski v. Watkins*, 544 F.2d 762, 764-65 (5th Cir. 1977).

This argument lacks merit. Under *Younger*, "[t]he critical question is not whether the state proceedings are still 'ongoing' but whether the state proceedings were under way *before initiation* of the federal proceedings." *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir. 1994)). Further, the 2015 indictment is not before this Court. The only matters before this Court are a motion for release pending review pursuant to FRAP 23(c) and a habeas court's power to

grant a writ, whether conditional or unconditional, of habeas corpus in light of a successful petition. This Court's power to fashion an appropriate remedy for habeas corpus relief is clearly a matter within this Court's "broad discretion." *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987).

## CONCLUSION

In accordance with the Fifth Circuit's mandate, this Court hereby issues habeas relief to Mr. Woodfox. The Court has carefully considered the more traditional relief of a conditional writ of habeas corpus, allowing a third prosecution of Mr. Woodfox. The Court has concluded, however, that such a remedy would be unjust and finds the exceptional circumstances involved in the instance case call for the issuance of an unconditional writ, ordering Mr. Woodfox's release pending writs applied for with the United States Supreme Court and barring his retrial. The Court has found at least five factors that weigh in favor of a finding of exceptional circumstances to justify an extraordinary remedy. The five factors include: Mr. Woodfox's age and poor health, his limited ability to present a defense at a third trial in light of the unavailability of witnesses, this Court's lack of confidence in the State to provide a fair third trial, the prejudice done onto Mr. Woodfox by spending over forty-years in solitary confinement, and finally the very fact that Mr. Woodfox has already been tried twice and would otherwise face his third trial for a crime that occurred over forty years ago. The fact that Mr. Woodfox has not served the maximum possible sentence and the fact that the underlying constitutional violation could be corrected upon retrial have little weight compared to the factors outlines above. Moreover, this is not a case where evidence of guilt is "overwhelming." Having considered the parties' arguments, the jurisprudence, and the factual and procedural history of this case, this Court exercises its discretion in finding that there are exceptional circumstances, and the only

just remedy is an unconditional writ of habeas corpus barring retrial of Mr. Albert Woodfox and releasing Mr. Woodfox from custody immediately. An order will be issued accordingly.

The only remaining issue is the State's request for a stay of any writ barring retrial pending an appeal by the State (doc. 309, at 31). In requesting a stay of such an order, the State bears the burden under *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[7] The four factors to be considered are as follows: (a) whether State has made "a strong showing" that it is likely to succeed on the merits of the pending appeal; (b) whether the State would be harmed irreparably absent a stay; (c) whether the stay will "substantially injure" other interested parties; and (d) where the public interest lies. 481 U.S. at 776-777. As to the four factor test, first, the State attempts to make a strong showing that it is likely to succeed on appeal of a writ barring retrial based on its contention that the factors found by this Court do not constitute grounds for extraordinary relief (doc. 309, at 32). Second, the State claims it would be irreparably injured absent a stay because Mr. Woodfox "is a danger to the public and is a flight risk." *Id*. at 33. The State urges that Mr. Woodfox's "many wealthy and influential supporters…would be motivated to remove him from the jurisdiction before any appeal of this Court's order could be heard." *Id*. at 33-34. Thirdly, the State claims that a stay would not substantially injure Mr. Woodfox, because he "has already been incarcerated for several decades." *Id*. at 34. Finally, the State argues that the public interest lies in re-prosecuting Mr. Woodfox.

---

[7] Prior to the State's second post-hearing brief, it made no arguments with regard to the four *Hilton* factors. Instead, the State argued that Mr. Woodfox was "released" from his 1998 conviction when Mr. Woodfox's original motion was filed (doc. 283, at 1). The State acknowledges the power of this habeas Court to provide relief for a successful habeas petitioner. However, the State then contends that the State's independent action of reindicting Mr. Woodfox on February 12, 2015, causing him to be transferred from detention under the 1998 conviction to parish detention under the third indictment, somehow limits this Court from entering such habeas relief as it sees fit. This argument fails because, as the Fifth Circuit has made clear, "[t]he state cannot defeat federal habeas review by unilaterally transferring the prisoner to the custody of another state actor." *See Schute v. Texas*, 117 F.3d 233, 237, n.2 (5th Cir. 1997).

On the other hand, Mr. Woodfox stresses the presumption in favor of release and the many factors cited as constituting an exceptional circumstances. In anticipation of such release, Mr. Woodfox has made arrangements with "two long-time residents of New Orleans who run the highly-acclaimed social service agency Hope House…to provide Mr. Woodfox with housing and employment and to facilitate his access to proper health care" (doc. 288, at 8).

For many of the same reasons that this Court is granting an unconditional writ, this Court also finds the State has not satisfied its burden, and the request for a stay of our order issuing an unconditional writ barring retrial is **DENIED**. For the same reasons this Court does not grant the State's request for a stay, the Court **GRANTS** the pending motion (doc. 279) for release.[8]

Signed in Baton Rouge, Louisiana, on June 8, 2015.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[8] Petitioner's original motion for release pending review was properly brought pursuant to FRAP 23(c). At this time, however, the State has recently sought review by the United States Supreme Court. The Court Rules of the United States Supreme Court are now also implicated. Supreme Court Rule 36, previously numbered Rule 49, was the model for FRAP 23. Fed. R. App. P. 23, comm. (d). According to Supreme Court Rule 36, with regard to custody of prisoners in habeas proceedings, "the initial order 'shall continue in effect' unless for reasons shown it is modified or a new order is entered." *Id.* Rule 23(c) establishes a presumption in favor of release from custody while a grant of habeas relief is pending review, unless a federal court orders otherwise. Under Rule 23(c), the State may rebut the presumption in favor of release, which functions as a demand for a stay of the presumed release pending review. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).